### BREWSTER v. CITY OF HORNELLSVILLE.

(Supreme Court, Appellate Division, Fourth Department. December 9, 1898.)

1. BUILDING CONTRACTS—EXTRA WORK—COMPENSATION.
    Under a finding that certain work and material were incidental to the execution of a contract, and necessary thereto, and a part of the performance thereof, the contractor is not entitled to extra pay for such labor and materials.

2. SAME—ASSIGNMENT—WAIVER.
    A provision of a contract inhibiting an assignment of it may be waived by the conduct of the parties.

Appeal from judgment on report of referee.

Action by Harry L. Brewster against the city of Hornellsville on a contract. From a judgment in favor of plaintiff entered on the report of a referee, defendant appeals. Reversed, and new trial ordered.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, and WARD, JJ.

F. A. Robbins, for appellant.
De Merville Page, for respondent.

HARDIN, P. J. Plaintiff's complaint alleges: That a contract bearing date the 28th day of June, 1894, was entered into between William E. Warren and the defendant, whereby the said Warren agreed to pave portions of Seneca street, Canisteo street, Broad

street, and Loder street, in said city, for which the defendant agreed to pay: For all excavations, per cubic yard, 27 cents; for paving with concrete foundation, per square yard, $1.63; for stone curbing, furnished and set, per lineal foot, 39 cents; for circular curb corners, furnished and set, per lineal foot, 59 cents; for stone curbing taken up and reset, per lineal foot, 7 cents; for 4-inch drain tile, furnished and laid, per lineal foot, 5 cents. "That the price aforesaid stated for 4-inch drain tile was the price bid for the underdrain." The complaint also alleges:

"That, at the request of the defendant and its agents, the said Warren, while building said paving, performed other work, labor, and services, and furnished material not included in the specifications in said contract for said paving: an itemized statement of the amounts of work, the value and character thereof, being set forth in Schedules A and B, hereto annexed, which are referred to, and made a part of this complaint."

It is also averred that the claims mentioned in Schedules A and B were verified and presented to the common council of the city more than three months before the commencement of this action, and that the common council refused and neglected to audit or pay the same. It is also alleged in the complaint "that, before the commencement of this action, [Warren] sold, assigned, transferred, and set over to this plaintiff his cause of action aforesaid."

The answer alleges that the plaintiff's Schedule A "is for work, labor, and services rendered and materials furnished under and by the terms of the contract mentioned in plaintiff's complaint; * * * that the work, labor, and services and materials last above mentioned is not extra work and materials, but a part of the contract, and has been paid for by defendant at the contract price." It is alleged that by the terms of the contract, and the plans and specifications accompanying the same, "it was optional with the defendant to require the laying of drain tile in the underdrains mentioned in the complaint, or not," and that the work and materials alleged in the complaint to be in the "building of an underdrain, and filling the same with broken stone, was in fact a part of said contract, and not extra work, and that the plaintiff is not entitled to recover therefor, as all the same has been paid for by defendant at the contract price." The answer also alleges that it was provided by the contract:

"The said party of the second part [W. E. Warren] further agrees that he will give his personal attention to the faithful prosecution of said work, and that he will not assign or sublet the same [meaning said contract] without the consent of the party of the first part [meaning this defendant]."

It is averred that the said Warren did assign said contract to this plaintiff, and thereby made a substantial breach of the contract, and a violation of its terms and conditions.

The referee finds the execution of the contract by Warren with the defendant, and he also finds:

"That the defendant reserved the right under said contract to make minor changes in the plan of the proposed work, deemed by the engineer for the best interests of the city, and to have said underdrains constructed of broken stone, instead of gravel and drain tile, at its election, and the defendant did

so elect, and such underdrains were constructed of said stone, by such change of plan; that the price of five cents per lineal foot was intended by both parties to be and was the price finally agreed on for such modified underdrains, and that said Warren, as agent of the plaintiff, constructed said underdrains as said plan was modified, and filled the same with broken stone; that the length of said underdrain, in the aggregate, was 10,824 feet, and the amount for which the defendant became indebted was $541.20, of which $393 have been paid before the commencement of this action; and that $148.20 remain due therefor, with interest, from completion of said contract."

It is found by the referee that the earth taken from the excavations was hauled at a much longer distance than specified in the contract, and—

"That said Warren and this plaintiff did haul it a much longer distance, under an agreement between said Warren and the defendant, made during the progress of the work, and immediately after it was commenced, to pay therefore two cents per cubic yard, said price covering the entire overhaul and work set forth in plaintiff's complaint. Schedule B, and that the same amounted to the sum of $927.38, and which price defendant agreed to pay, and said Warren agreed to accept."

The evidence does not support the finding made.

(a) There is no evidence of a joint agreement made by Warren and the plaintiff with the defendant to do the work mentioned.

(b) There was no agreement "immediately after the work was commenced to pay therefor two cents per cubic yard, said price covering the entire overhaul and work set forth in plaintiff's complaint."

(c) There was no price "mutually agreed upon" in writing. Dalrymple, the defendant's engineer, testified:

"No price for overhaul was agreed upon at any time prior to the completion of this work entire, by me; and I never did agree, in writing or verbally, in any way, to allow any sum."

(d) The only assignment put in evidence is the one executed by Warren to the plaintiff on the 5th of July, 1894. In that assignment, Warren purports to transfer to the plaintiff "all my [his] right, title, interest in the contract in writing, dated June 28, 1894, and executed by and between the city of Hornellsville, New York, party of the first part, and I, the said William E. Warren, as party of the second part, thereto. This assignment of said contract is hereby intended to give to the said Brewster all the interest I may have or hold in the same, and absolutely, and without any qualification, limitation, and condition whatever." That assignment is the only one produced by the plaintiff to support his right to recover upon any of the claims mentioned in the complaint, or stated in the referee's report. Plaintiff failed to make a case against the defendant as to the overhaul, and the findings of the referee in respect thereto are not satisfactory.

2. The referee found as a matter of fact, viz.:

"That at the request of the defendant the said Warren and said plaintiff, while constructing said pavement and performing said contract, performed other work, labor, and services for the defendant, not included in said contract, nor specifications thereunder, and furnished material not included therein, and that an itemized statement of amounts, value, and character thereof is contained in Schedules A and B of plaintiff's complaint, and that claims for such work, labor, and services, and materials, properly verified,

were duly presented to the common council of the defendant, the city of Hornellsville, more than three months prior to the commencement of this action, and said defendant refused and neglected to audit or pay the same, and which claims included the work specified as overhaul in said Schedule B. but at a different price from that agreed on by the parties; and being for surplus earth hauled by said Warren and said plaintiff beyond the 1,000 feet specified in said contract, and under the agreement of two cents per cubic yard, as aforesaid. That said work, labor, services, and materials, for which defendant agreed to pay, were all incidental to the execution of said contract, and necessary thereto, and a part of the performance thereof, and included the following items, besides said overhaul, viz."

We think the learned referee fell into an error in finding that Warren and the plaintiff jointly were engaged in carrying on and completing the work. The evidence tended to indicate that, shortly after the execution of the contract by Warren with the defendant, he made an absolute assignment of the same to the plaintiff. The learned referee, in his ninth finding, states that Warren assigned to the plaintiff—

"All his right, title, and interest in and to said contract between said William E. Warren and the defendant bearing date June 28, 1894, and all interest he might have or hold in the same absolutely, and without any qualifications, limitation, or condition whatever, and to the moneys due and to grow due thereon, when said work under said contract should have been performed, or in the progress of the same, but that the defendant was in no wise a party to said assignment and transfer, and had no knowledge of the same at the time it was made."

The learned referee has allowed a recovery for labor, work, and services, and materials, to the extent of $636.21, the items of which are stated in the seventh finding of fact; and he has found affirmatively that such work, labor, and services "were all incidental to the execution of said contract, and necessary thereto, and a part of the performance thereof." This later finding seems to be supported by the terms of the contract, and the plans and specifications that were attached to the contract, and become binding upon the parties to it. In the eleventh finding the referee states as a fact:

"That the defendant has paid said Warren, with the consent and acquiescence of the plaintiff, for all work, labor, and services performed under said contract by said Warren or said plaintiff, and for material furnished thereunder by either, except balance herein reported unpaid."

His fifth conclusion of law was as follows:

"That the defendant became and is further indebted to the plaintiff in the further sum of $636.21 for said work and material set forth in Schedule A of plaintiff's complaint."

It is difficult to harmonize that conclusion of law with the facts found by the referee. If the views which we have expressed in respect to the items mentioned in Schedule A being covered by the contract and the plans and specifications are correct, such indebtedness did not arise in favor of the plaintiff. Besides, the contract contained a clause which was inserted, apparently, to avoid claims for extra work. In the stipulation as to prices and payments to be made by the party of the second part, to wit, the city, to the contractor, the following language is found:

"And the said party of the second part [the contractor] further agrees to receive the following prices as compensation for furnishing all the materials and performing all the labor which may be required in the prosecution of the whole work to be done under this agreement."

Then follows an enumeration of the prices, and after that enumeration occur in the contract the following words:

"It being expressly understood that the measurement shall be taken after the entire completion of each class of work, and that the aforesaid prices cover the furnishing of all the different materials and labor, and the performing of all the work, mentioned in the specifications and agreement."

It is further provided in the contract, viz.:

"And the said party of the second part further agrees that he shall not be entitled to demand or receive payment for any portion of the aforesaid work or materials except upon certificate of the engineer in charge, and that he shall not be paid or allowed for any extra work of any kind or nature whatever, unless the price therefor shall be first mutually agreed upon, and the same shall be put in writing by the parties hereto."

We think the evidence does not sustain the conclusion reached by the referee in respect to the items mentioned in the seventh finding of fact.

3. It is contended in behalf of the appellant that the words found in the original contract inhibiting an assignment were such as to prevent the plaintiff acquiring title to the contract. The referee seems to have been of the opinion that the acts and conduct of the defendant, with its early knowledge of the fact that the contract had been assigned to the plaintiff, were such as to warrant a conclusion that the defendant had waived that provision in the contract. That the defendant might make such waiver as to prevent it from insisting upon the objection after the work was performed and accepted, cannot be doubted. Whether the evidence should receive that construction was a question of fact, which the learned referee passed upon, and as to which we need not express a conclusive opinion, inasmuch as the other views we entertain in the case require a new trial. In Devlin v. Mayor, etc., 63 N. Y. 14, Allen, J., said:

"There was evidence which would have authorized * * * the referee to find a waiver of all objections, if not an express assent to the assignment now claimed to be fatal to this action, and to any recovery for work done."

It was also assumed in Hackett v. Campbell, 10 App. Div. 526, 42 N. Y. Supp. 47, that such waiver might take place.

4. There is no specific finding by the referee when the items which he allows became due, and yet he has made a general award, with direction that interest be allowed "from the time when they respectively became due." The use of this language seems to indicate that he entertained the opinion that the items became due at different times. After filing the report with the clerk, the respondent seems to have asked the clerk to make a computation of interest. While this unusual course might be corrected, perhaps, by a computation made, upon the whole evidence and the findings that are before us we think the referee, in awarding interest, might have stated definitely the time from which it was to be computed, or,

what would have been more satisfactory, he should have made the computation himself, and added it to the damages which he concluded to allow.

The foregoing views lead to the conclusion that the judgment should be reversed, and a new trial ordered.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.